IN THE UNTED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION
CASE NO. 5:23-cv-00191-DCR
*Filed Electronically*

ECLIPSE SPORTSWIRE                                         PLAINTIFF

V.                      <u>ANSWER AND COUNTERCLAIM</u>

LANNI BLOODSTOCK, LLC                                DEFENDANT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Comes now the Defendant, Lanni Bloodstock, LLC ("Defendant"), by and through counsel, and for his Answer and Counterclaim against Plaintiff Eclipse Sportswire, hereby states the following:

<u>INTRODUCTION</u>

The above-styled litigation concerns the publication of two (2) images on the website: "lannibloodstock.com." While the Plaintiff claims that the first image was taken of the thoroughbred *American Pharaoh* and that it has rights to pursue a copyright claim for that image, the photograph clearly depicts the thoroughbred *Bayern* at the Haskell Invitational on July 27, 2014.[1] The second image is of the thoroughbred *Dortmund* at a Churchill Downs Allowance race on November 29, 2014. As will be set forth hereinbelow, the Court should be cognizant of several key points concerning this litigation:

First, the Plaintiff, Eclipse Sportswire ("Plaintiff"), did not photograph these thoroughbreds nor is it the "author" or "copyright claimant" of the photographs at issue. As such, Plaintiff may not have standing to file the above-styled litigation. Second, the Defendant did not download or

---

[1] This matter is presently pending on a Motion for Partial Dismissal.

1

publish the images. Rather, it was a Canadian company, Career Lion Inc., who obtained them from a news source and then published them on the website: "lannibloodstock.com," which it hosts on its servers in Montreal, Canada. All actions concerning the photographs occurred extraterritorially. Therefore, this Court may not have subject matter since American copyright laws do not extend to actions taken beyond the borders of the United States. Finally, when the Plaintiff first raised the issue of a possible copyright infringement, the Defendant immediately requested that the Canadian company, Career Lion Inc., remove the images. The company agreed, and the images were promptly removed. The Plaintiff, however, hired non-lawyers to try to force the Defendant into paying nearly 100 times their fair market value. When the Defendant did not do this, the Plaintiff hired Florida attorneys—who were not licensed to practice law in the Commonwealth of Kentucky—to send demand letters into the Commonwealth and attempting to force the Defendant to now pay 400 times the worth of these images. When this did not work, the Plaintiff filed the above-styled litigation now seeking to extort nearly 2,000 times the fair market value of these images. Such tactics are a gross abuse of the judicial system to simply extort hundreds of thousands of dollars from the Defendant over low-value images.

## ANSWER

1. The Defendant admits the allegations contained in Numerical Paragraphs 2, 4 and 22 of the Plaintiff's Complaint.

2. The Defendant denies the allegations contained in Numerical Paragraphs 3, 5, 23, 26, 28, 29, 37, 38, 39, 40, 41, 42, 48, 49, 51, 52, 53 and 54 of the Plaintiff's Complaint.

3. The Defendant is without sufficient information to admit or deny the allegations contained in Numerical Paragraphs 1, 6, 7, 8, 9, 10, 11, 12, 13, 16, 17, 18, 19, 21, 26, 30, 31, 33, 34, 35 and 36 of the Plaintiff's Complaint, and therefore denies said allegations.

4. With respect to Numerical Paragraph 14, the Defendant denies the allegation that the "First Photograph" depicts *American Pharaoh*, as the image referenced is of the thoroughbred, *Bayern*. The Defendant is without sufficient information to admit or deny the remaining allegations of these Numerical Paragraphs, and therefore denies said allegations.

5. With respect to Numerical Paragraph 15, the Defendant denies the allegation that the referenced photograph of *Bayern* was "registered by Mr. Serio with the Register of Copyrights on July 2, 2015 and was assigned Registration No. VA 1-974-784," as this is a reference to Mr. Serio's photograph of *American Pharaoh*. The Defendant is without sufficient information to admit or deny if Mr. Serio holds a registration for the image of *Bayern*, as none is referenced or attached to the Complaint. The Defendant therefore denies the remaining allegations of this Numerical Paragraph.

6. With respect to Numerical Paragraphs 24 and 25 of the Plaintiff's Complaint, the Defendant denies the allegation that "Defendant published the [First/Second] Photograph," as it was a Canadian company, Career Lion Inc., who published the photographs. The Defendant is without sufficient information to admit or deny the remaining allegations of these Numerical Paragraphs, and therefore denies said allegations.

7. With respect to Numerical Paragraph 27 of the Plaintiff's Complaint, the Defendant states that it was the Canadian company, Career Lion Inc., who downloaded and published the photographs. The Defendant admits the remaining allegations of Numerical Paragraph 27.

8. With respect to Numerical Paragraphs 46 and 47 of the Plaintiff's Complaint, the Defendant states that the website: "lannibloodstock.com" was designed and published by a Canadian company, Career Lion Inc., who continues to operate and manage the website and hosts it on their servers in Montreal, Canada. *See IP Locators, attached hereto as Exhibit "A."* The

website has never been hosted on an American website. The Defendant admits the remaining allegations of Numerical Paragraphs 46 and 47.

9. With respect to Numerical Paragraph 50 of the Plaintiff's Complaint, the Defendant states that Plaintiff again references *American Pharaoh*, which is not featured on the website: "lannibloodstock.com." The Defendant denies the remaining allegations of this Numerical Paragraph.

10. With respect to Numerical Paragraph 55 of the Plaintiff's Complaint, the Plaintiff falsely alleges that the photographs are still hosted on the website: "lannibloodstock.com." This is incorrect, as the photos were removed in March 2022. The Defendant therefore denies the allegations of Numerical Paragraph 55.

11. Numerical Paragraphs 20, 32, 43, 44 and 45 of the Plaintiff's Complaint are summations and/or contain solely legal conclusions that do not require an admission or a denial. To the extent a response is required, the Defendant denies same.

12. All facts and/or allegations not specifically admitted are hereby denied.

## AFFIRMATIVE DEFENSES

13. The Defendant hereby pleads all affirmative defenses contained in Civil Rule 8 of the Federal Rules of Civil Procedure including, but not limited to: unclean hands, waiver, estoppel, fraud, statute of limitations, and illegality. The Defendant further pleads all applicable copyright law defenses including, but not limited to: Fair Use Doctrine, First Sale Doctrine, implied license, innocent infringement, and any other defense expressly stated in 17 U.S.C. 107-810, or identified in an opinions relating to copyright law.

14. The Defendant hereby pleads that the Plaintiff's Complaint fails to state a claim on which relief can be granted.

15. The Defendant hereby pleads that this Court lacks Subject Matter Jurisdiction as (a) the Plaintiff lacks standing pursuant to 17 U.S.C. 501, and (b) the acts giving rise to the Plaintiff's Complaint occurred outside of the United States.

With respect to the issue of standing, 17 U.S.C. 501(b) states that only the "legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it." *17 U.S.C. 501(b).* Neither of the attached Copyright registrations list Plaintiff as the author or "copyright claimant," and Plaintiff cites no other document or agreement supporting their claim of standing. Moreover, as set forth hereinabove, the Plaintiff's Complaint contains numerous inaccuracies and misprints regarding the specific thoroughbreds at issue and the respective Copyright registration. It is therefore extremely likely that Plaintiff failed to even list the correct paperwork for these two photographs. Nevertheless, as neither the owner nor "copyright claimant," Plaintiffs do not have standing to file the above-styled litigation and the Court therefore lacks Subject Matter Jurisdiction.

With respect to the issue of extraterritorial application of American copyright laws, it is a long-standing principle that United States copyright laws do not have extraterritorial operation. *Subafilms, Ltd. v. MGM-Pathe Communications, 24 F.3d 1088, 1095-98 (9th Cir.) (en banc), cert. denied, 513 U.S. 1001, 115 S. Ct. 512, 130 L. Ed. 2d 419 (1994) ("Because we conclude that there can be no liability under the United States copyright laws for authorizing an act that* itself *could not constitute infringement of rights secured by those laws, and that wholly extraterritorial acts of infringement are not cognizable under the Copyright Act, we overrule* Peter Starr *insofar as it held that allegations of an authorization within the United States of infringing acts that take place entirely abroad state a claim for infringement under the Act."); Liberty Toy Co. v. Fred Silber Co.,*

*1998 U.S. App. LEXIS 14866 (6th Cir. June 29, 1998) (recognizing the holding of Subafilms, Ltd., and only permitting a copyright claim where there was "significant activity" in the United States, i.e. shipping materials into the United States, holding them in the United States, etc.); Navarro v. P&G, 515 F. Supp. 32 718 (S.D. Ohio 2021) ("While case law on the topic is slim, it appears that there must be conduct in the United States that actually constitutes infringement to establish a domestic violation. Merely authorizing infringement is not enough."); RJR Nabisco, Inc. v. European Cmty., 579 U.S. 325, 335, 136 S. Ct. 2090, 2100 (2016) ("absent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application").*

Here, the Defendant enlisted a foreign company to design and manage its website: "lannibloodstock.com." It was this foreign company—Career Lion Inc.—that found, downloaded and/or published the images at issue in this proceeding. All of these actions occurred extraterritorially, and therefore are not subject to United States' copyright laws. Moreover, the website itself is hosted on Career Lion Inc.'s foreign servers in Montreal, Canada. *See Exhibit A.* Even if the Defendant had simply "authorized" the use of these photographs on the website, such "authorization" does not amount to a copyright violation. *Supra.* Accordingly, this Court does not have Subject Matter Jurisdiction over this matter as it concerns extraterritorial actions.

COUNTERCLAIM

16. The facts and allegations contained in Numerical Paragraphs 1-15, are hereby incorporated and restated as if fully set forth herein.

17. The Defendant, Lanni Bloodstock, LLC, is a Kentucky Limited Liability Company owned and operated by its namesake, Mr. Donato Lanni. With nearly thirty (30) years' of success and experience in the horse industry, Mr. Lanni's accomplishments have been printed in numerous

thoroughbred-publications including *Bloodhorse*, *Thoroughbred Daily News*, and *Horse Racing Nation*, as well as *The New York Times*, who published an entire exclusive on Mr. Lanni and his achievements in April 2015, entitled: "Dortmund, Leading Derby Contender, Is Horse Discoverer's Latest Star." As a native of Montreal, Canada, Mr. Lanni has also been featured in numerous Canadian publications such as the *Montreal Gazette* and the *Toronto Sun.*

18.    In 2021, a Canadian branding company: Career Lion Inc. ("Career Lion") contacted the Defendant and requested to create, publish and maintain a website to showcase Mr. Lanni and his near accomplishments in scouting thoroughbred horses. The Defendant agreed, and Career Lion subsequently created the website: "lannibloodstock.com." Several key facts should be noted about the website:

First, the website is hosted on Career Lion's servers in Montreal, Canada—not by the Defendant in the United States. Second, at all times the website—including all of the photographs published thereon—has been and is published, maintained and hosted by Career Lion. Therefore, all actions concerning the website have been and are taken extraterritorially in Montreal, Canada. The Defendant did not oversee the creation of the website, and provided no input outside of answering questions regarding its own history and accomplishments. The Defendant also has no direct access to edit or revise the website's contents. If the Defendant wanted to change a portion of the website, it would have to contact Career Lion and request that a change be made. Finally, the website itself is "passive" in that it only provides information regarding the Defendant and Mr. Lanni. The Defendant does not sell images on the website, nor is there an interactive mechanism for prospective "clients" to contact the Defendant for business. This is because the Defendant was *already* an extremely successful and well-known scout and bloodstock agent long before the

creation of the website. The website simply provided a platform to showcase the Defendant's history and provide news updates regarding its achievements.

19. Career Lion published the website: "lannibloodstock.com" in 2021. In doing so, Career Lion—not the Defendant—downloaded and published the photographs used thereon. All actions concerning these photographs were taken extraterritorially in Montreal, Canada.

*ImageRights for Law Firms*

20. Thereafter, the Plaintiff hired a third-party: ImageRights International, Inc. and its division "ImageRights for Law Firms" ("ImageRights") to contact the Defendant and demand a fee of $14,000.00 for use of the images on the website: "lannibloodstock.com." ImageRights holds itself out as a "cloud-based image search and evidence gathering service to law firms that is specifically designed to find actionable copyright infringements and counterfeits." *See "imagerightsip.com/about."* It is not a law firm licensed to practice law in the Commonwealth of Kentucky, yet the correspondence to the Defendant repeatedly references "case" numbers, and purports to provide legal authority and legal conclusions which were clearly intended to coerce the Defendant into paying nearly 100 times the fair market value of the images.

21. The Defendant ultimately contacted Career Lion and requested that the remove the images. Career Lion agreed to do so, and the images were removed on March 18, 2022.

22. Despite the removal of the photographs from the website: "lannibloodstock.com," Plaintiff had ImageRights continue to contact the Defendant and demand $14,000.00 (nearly 100 times the worth of these photographs). In doing so, ImageRights falsely claimed that the images "continued to be displayed" on the website.

*CopyCat Legal*

23.On July 20, 2022, the Plaintiff then hired an entity known as: CopyCat Legal, 3111 N. University Drive, Suite 301, Coral Springs, Florida 33065 ("CopyCat") to send a letter to the Defendant regarding the images. To further pressure the Defendant, this latest correspondence increased its demand of $14,000.00 to $60,000.00 (or $30,000.00 per photograph), to be paid within fourteen (14) days. The letter did not provide an explanation of how the alleged damages quadrupled in a matter of months when the photographs had been removed from the website. Rather, it simply stated the following: "As the matter has now been turned over to counsel, any chance of resolving this matter anywhere close to the original demand has expired." Given that the images themselves were worth approximately $150.00, it is clear that this was just another effort to extort thousands of dollars from the Defendant. This July 20, 2022 letter also raised the following concerns:

First, the letter purports to be from a law firm and is signed by two Florida lawyers: Daniel DeSouza, Esq. and James D'Loughy, Esq. Neither of these individuals are licensed to practice law in the Commonwealth of Kentucky. Nevertheless, they sent a legal demand letter (citing case law and legal conclusions), and represented themselves as having been "retained as ***litigation*** counsel." Said attorneys further advised that if the Defendant did not pay the extortionist amount of $60,000.00, "the attached Complaint will be filed" in the United States District Court for the Eastern District of Kentucky, which included their signed, signature line. *See Ky. Bar Ass'n v. Unnamed Atty.*, 476 S.W.3d 886 (Ky. 2015) (holding that the "practice of law" includes "any service rendered involving legal knowledge or legal advice, whether of representation, counsel, or advocacy in or out of court, rendered in respect to the rights, duties, obligations, liabilities, or business relations of one requiring the services," and recognizing that the Kentucky Supreme

*Court has "sanctioned Kentucky attorneys for practicing in other jurisdictions without authorization."); see also Fla. Bar v. D'Ambrosio, 25 So. 3d 1209 (Fl. 2009) (holding that a letter by a Florida attorney to an out-of-state company representing himself as "counsel," citing out-of-state law and demanding satisfaction of a claim constituted the "unlicensed practice of law" in that state and violated Florida's own Rules).* In other words, the Plaintiff hired these Florida lawyers to practice law in the Commonwealth of Kentucky without authorization.

Second, the July 20, 2022 letter again falsely alleges that the photographs were still published on the website: "lannibloodstock.com." As noted hereinabove, despite not being required to, the Canadian company Career Lion removed the images in March 2022.

Finally, the letter makes several references to a photograph of *American Pharaoh* allegedly by a photographer, Scott Serio. As noted hereinabove, the photograph cited is actually of the thoroughbred *Bayern*, and no image of *American Pharaoh* was published on the website.

24.     The Defendant subsequently provided the IP Locator information establishing that the images and the website: "lannibloodstock.com" were hosted on foreign servers in Montreal, Canada—not by the Defendant in the United States.

25.     Nevertheless, the Plaintiff filed this lawsuit on June 26, 2023.

26.     The Defendant believes that the Plaintiff's actions as described hereinabove and in filing this lawsuit is a regular and recurring aspect of its business to employ a judicial proceeding for an "irregular or wrongful" ulterior purpose to extort funds from defendants.

COUNT ONE
(*Abuse of Process*)

27.     The facts and allegations contained in Numerical Paragraphs 1-26, are hereby incorporated and restated as if fully set forth herein.

28. As described hereinabove, the Plaintiff's conduct in (a) hiring third parties not authorized to practice law in the Commonwealth of Kentucky to force the Defendant to pay 100 times the worth of these images, (b) hiring third parties not authorized to practice law in the Commonwealth of Kentucky to force the Defendant to pay 400 times the worth of these images, and (c) in filing this lawsuit and seeking more than 2,000 times the worth of these images when the Plaintiff lacks standing and the Court lacks subject matter jurisdiction, reflects the Plaintiff's clear intention to extort money from the Defendant through an "irregular or wrongful employment of a judicial proceeding" and for an "ulterior purpose."

29. As a direct and proximate result of the Plaintiff's actions, the Defendants have suffered and will continue to suffer harm. The Defendants are therefore entitled to compensatory damages, punitive damages, costs, attorney's fees and any and all other relief to which the Court may award.

WHEREFORE, for the foregoing reasons, the Defendant respectfully requests that this Court enter an Order DISMISSING all Plaintiff's claims with prejudice, and GRANTING a Judgment in favor of the Defendant on its Counterclaim. The Defendant further respectfully requests that this Court award it compensatory damages, punitive damages, statutory damages, attorney's fees and any other award to which the Defendant may be entitled.

Respectfully submitted,

BULLOCK & CECIL, LLP

/s/ Thomas D. Bullock
Hon. Thomas D. Bullock
Hon. Rachele T. Yohe
234 North Limestone
Lexington, Kentucky 40507
Telephone: (859) 225-3939
Facsimile: (859) 225-5748
tbullock@bullockcecil.com
ryohe@bullockcecil.com

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a true and correct copy of the foregoing was served via the Court's CM/ECF system and via electronic mail upon Hon. Randall S. Strause, Strause Law Group, PLLC, 804 Stone Creek Pkwy., Suite One, Louisville, Kentucky 40223 this the 27th day of July 2023.

                                                  /s/ Thomas D. Bullock
                                                  Thomas D. Bullock